UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JAMIE EDWARD OVERBAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, *Commissioner of Social* ) <br> *Security*, ) <br> ) <br> Defendant. ) <br> ) | No. 6:19-CV-53-HAI <br><br> MEMORANDUM OPINION & ORDER |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On June 24, 2016, Plaintiff Jamie Edward Overbay protectively filed a Title II application for a period of disability and disability insurance benefits. D.E. 8-1 at 46, 61.[1] He dated the beginning of his disability period to June 8, 2016. *Id*. at 152. Overbay claimed in his initial application disability due to degenerative disc disease, herniated disc, bilateral hip avascular necrosis, and arthritis. *Id*. at 46. The Social Security Administration denied Overbay's claims initially on November 23, 2016, and upon reconsideration on January 18, 2017. *Id*. at 61.

After Overbay filed his Title II application, in July 2016 and then in December 2016, he underwent two surgeries related to bilateral hip avascular necrosis. *Id*. at 315-16, 380. Both surgeries were core decompressions with bone grafting: the first being of the left hip and the second being of the right hip. *Id*. On November 21, 2017, upon Overbay's request, Administrative Law Judge ("ALJ") Joyce Francis conducted an administrative hearing. *Id*. at 61. The ALJ heard

---

[1] The Court will refer to the page numbers generated by the Social Security Administration, printed out on the bottom of each page of the administrative record.

testimony from an impartial vocational expert ("VE"), Jane Hall, and from Overbay, who was represented by counsel. *Id*.

Overbay was 42 years old on the alleged onset date. D.E. 8-1 at 70. He has a high school education and has never received vocational or any other training. *Id*. at 14. His past relevant work experience includes heavy machine operator,[2] having worked in that capacity for various companies since 1996. *Id*. at 222. The ALJ found that Overbay had certain severe impairments, but that they did not meet the severity of the "listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," and that Overbay "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)," with certain limitations. *Id*. at 63-64. Because there were adequate available jobs he could perform, the ALJ found Overbay was "not disabled." *Id*. at 71.

Overbay now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits. D.E. 1. He argues that the ALJ erred in failing to find that Overbay's right hip condition constitutes a severe impairment and that the ALJ ascribed insufficient weight to the opinion of a treating physician. D.E. 14. Specifically, he argues that the ALJ erroneously found that Dr. Carter was not a treating physician and that Overbay was actually treated by Dr. Carter's physician's assistant. *Id*. Both parties consented to the referral of this matter to a magistrate judge. D.E. 11; 12. Accordingly, and in conformity with the Order at Docket Entry 10, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* D.E. 10. The Court, having reviewed the

---

[2] The ALJ's opinion (D.E. 8-1 at 70) states that Overbay's past relevant work was as a document preparer, addressing clerk, and information clerk. However, this is incorrect as his past relevant work was as a heavy machine operator. This defect does not effect the analysis undertaken by the Court.

2

record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 14) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 16).

## I. The ALJ's Findings

Under 20 C.F.R. §§ 404.1520 and 416.920, the ALJ conducts a five-step analysis to evaluate a disability claim.[3] The ALJ followed these procedures in this case. *See* D.E. 8-1 at 58-76. At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Overbay "has not engaged in substantial gainful activity since June 8, 2016, the alleged onset date." D.E. 8-1 at 63. The ALJ thus proceeded to the next step.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Overbay did suffer the following significant impairments: "status post left hip core decompression for avascular necrosis and degenerative disc disease of the lumbar spine." D.E. 8-1 at 63. The ALJ determined that Overbay's tobacco abuse, gastroesophageal reflux disease, and status post right inguinal hernia repair were "non-severe," as they did not result in "more than minimal work-related limitations." *Id*. Overbay now takes issue with the ALJ's assessment that his "right hip condition" is not a severe impairment. D.E. 8-1 at 63-64.

---

[3] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry …, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity … and vocational profile.

*Id*. at 474 (internal citations omitted).

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Overbay failed to meet this standard. D.E. 14 at 5-6.

If, as here, a claimant is found to be not disabled at step three, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. 20 C.F.R. 404.1520(e). The ALJ determined that Overbay has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except:

> he can only occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently be exposed to extreme cold and vibration; and can never be exposed to unprotected heights or dangerous moving machinery.

D.E. 8-1 at 64. In making this determination, the ALJ stated she considered Overbay's underlying physical or mental impairments and whether they could reasonably cause Overbay's pain or symptoms and she determined that Overbay's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id*. But, the ALJ also found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. Overbay argues that the ALJ erred in evaluating the medical opinions on the record. D.E. 14.

The ALJ noted in her opinion the great weight she gave to the state agency examiners' opinions and the little weight she afforded to treating physician Dr. Richard Carter's opinion because "he did not actually treat the claimant, rather the claimant was treated by his physician's assistant." *Id*. at 70. Moreover, the ALJ pointed out that the limitations Dr. Carter indicated were

4

"set forth in a checkbox format with no supporting evidence for the degree of limitations imposed." *Id*.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his RFC), he is not disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined that Overbay "has past relevant work as a document preparer, addressing clerk, and information clerk." *Id*. She found that Overbay is unable to perform any past relevant work "as actually or generally performed." *Id*.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). Overbay, at the time of the opinion, was 42 years old with at least a high school education. *Id*. The ALJ found that Overbay "is capable of making a successful adjustment to other work," namely, the occupations the VE testified that Overbay could perform the requirements of, which were "cleaner," "mail sorter," and "merchandise marker." *Id*.

Accordingly, on April 12, 2018, the ALJ issued an unfavorable decision, finding that Overbay was not disabled, and thus was ineligible for a period of disability and disability insurance benefits. D.E. 8-1 at 71. Overbay requested review of the ALJ decision by the Appeals Council on May 9, 2018. D.E. 8-1 at 145-46. The Appeals Council issued its decision finding that Overbay "is not entitled to a period of disability or disability insurance benefits" on February 4, 2019. D.E. 8-1 at 6. The Appeals Council agreed with the ALJ with regard to steps one, two, three, and four, but disagreed with the ALJ's analysis at step five finding that Overbay could work as a cleaner, mail sorter, and merchandise marker. *Id*. at 4-5. The Appeals Council found that these jobs are "light exertional level jobs" which Overbay would be unable to perform, but that he would be able

to perform jobs suitable for reduced sedentary work, such as a document preparer, address clerk, and information clerk. *Id*. at 5.

## II. General Legal Standards

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id*. (citing *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id*. (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs*., 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey*

*v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### III. The ALJ's Assessment of Overbay's Severe Impairments

Overbay's first argument on appeal is that the ALJ erred by failing to find that his right hip condition constitutes a severe impairment. D.E. 14 at 5-6. Specifically, he argues that the record is conclusive in establishing that Overbay's right hip condition exceeds the slight abnormality standard. *Id*. In response, the Commissioner takes a larger view and argues "that the real question . . . is whether the ALJ's RFC finding was reasonable." D.E. 16 at 9.

To conclude that the claimant has a "severe impairment," the ALJ must find that an impairment or combination of impairments significantly limits the claimant's ability to do basic work activity without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(c). An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 416.908. "The ALJ need not find credible a claimant's subjective complaints or medical assessments not supported by the medical evidence or the record as a whole." *Long v. Apfel*, 1 F. App'x. 326, 331 (6th Cir. 2001), *citing* 20 C.F.R. § 416.929; *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

As to the determination that Overbay's right hip condition was not a severe impairment, the Court finds that the ALJ's decision was supported by the record. Overbay's surgeon who performed his right hip procedure observed, after a follow-up appointment on July 26, 2017, that Overbay had "fairly good success with the right hip with core decompression." D.E. 8-1 at 470.

7

The ALJ noted this improvement in her decision as support for finding that Overbay's right hip condition was not a severe impairment. *See id*. at 68. Notably, the ALJ also found that records from Dr. Beliveau showed that Overbay had reported that "overall he was able to do all of his regular activities, but when trying to increase activities he had significant soreness and pain to the left groin restricting his walking ability." *Id*. And, going further, the ALJ found that Overbay continually "opted to continue with conservative treatment." *Id*. Of course, the ALJ found that Overbay had two severe impairments: "status post left hip core decompression for avascular necrosis and degenerative disc disease of the lumbar spine." D.E. 8-1 at 63. Any error by the ALJ in failing to find that Overbay's right hip condition was a severe impairment did not preclude the ALJ from continuing to the next step of the five-step analysis. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008), citing *Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find an impairment was severe was harmless error where other impairments were deemed severe.) Moreover, this meant the right hip condition was considered in the subsequent analytical steps instead of being ignored. *Id*. Accordingly, the ALJ did not commit reversible error as to the determination that Overbay's right hip condition was not a severe impairment.

As to the contention by the Commissioner that "the real question before this Court is whether the ALJ's RFC finding was reasonable," the Court finds that substantial evidence supports the ALJ's determination. The ALJ determined that Overbay had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), which provides:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8

20 C.F.R. § 404.1567(a); *See* D.E. 8-1 at 64.

The ALJ provided a thorough review of Overbay's medical records, which she relied on in making her decision, as well as the testimony Overbay provided at the ALJ hearing. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." D.E. 8-1 at 64. Additionally, the ALJ considered the questionnaire provided by Dr. Carter, Overbay's primary care physician, and state agency examiners Drs. Geurrero, Whitman, Freudenberger, and Culbertson. Dr. Guerrero determined that Overbay suffered from "disorders of back-discogenic and degenerative" and "osteoarthritis and allied disorders." Dr. Whitman opined that Overbay had the RFC to perform light work, citing many specific records from Overbay's file which factored into that determination. *See* D.E. 8-1 at 32-41. Dr. Freudenberger made the same determination as to the medically determinable impairments and Dr. Culbertson found that Overbay could perform sedentary work. The doctors extensively cited specific medical records to support this conclusion. *Id*. at 46-55.

Accordingly, the undersigned finds that the ALJ's RFC determination was based on substantial evidence in the record.

### IV. The ALJ's Assessment of Overbay's Treating Physician

Section 416.927 of the regulatory code describes how the Commission is to evaluate medical opinion evidence.[4] "Generally," treating sources are given "more weight" than non-treating sources. 20 C.F.R. § 416.927(c)(2). The regulation informs claimants, "If we find that a

---

[4] These regulations apply to Overbay's claim because it was filed before March 27, 2017. The newer regulations, codified at 20 C.F.R. § 416.920c, no longer incorporate a "controlling weight" standard. *See id.* § 416.920c(a).

treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id*. However, there may be "good reasons" for declining to ascribe "controlling weight." *Id*. Such reasons include how well the opinion is supported by relevant evidence (*id*. § 416.927(c)(3)) and how consistent the opinion is with "the record as a whole" (*id*. § 416.927(c)(4)).

Overbay argues that the ALJ "failed to comply with controlling law in evaluating the opinion of Dr. Carter," and "her reasons for rejecting his opinion are not based on substantial evidence." D.E. 14. Under the regulations as they existed in 2016, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record,' then it will be accorded controlling weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 004)).

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization. *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (*citing Wilson*, 378 F.3d at 544). The ALJ must provide "good reasons" for discounting a treating physician's opinion, and the reasons must be "sufficiently specific" so any reviewers will know the ALJ's reasoning for ascribing a particular weight to the opinion. *Rogers*, 486 F.3d at 242.

As to her consideration of the medical opinion evidence, the ALJ explained:

> great weight has been given the state agency examiners, Drs. Guerrero and Whitman as they have program knowledge and their findings are consistent with the medical evidence of record and they explain and support their opinions (1A). Great weight has been given state agency examiners, Drs. Freudenberger and Culbertson as they have program knowledge and their findings are consistent with the medical evidence of record and they explain and support their opinions (4A). Little weight has been given the findings of Richard Carter, M.D., because he did not actually treat the claimant, rather the claimant was treated by his physician's assistant. Moreover, the limitations are set forth in a checkbox format with no supporting evidence for the degree of limitations imposed (14F).

D.E. 8-1 at 70.

Here, the Court finds that the ALJ's determination that Dr. Carter is not a "treating physician" is supported by the record. *See* 20 C.F.R. §§ 404.1502, 416.902 (defining a treating source as a physician who "provides you, or has provided you with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.") "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

There is only one appointment in the record during which Dr. Carter is listed as the "provider" and that was for a follow-up appointment for back pain on June 9, 2015. D.E. 8-1 at 296. In all other appointment records, Dr. Carter is either listed as a "supervisor" or not listed at all. The Sixth Circuit affirmed the ALJ's assignment of little weight to a doctor who was the "supervising provider" of a nurse practitioner in the case of *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744 (6th Cir., Dec. 13, 2017). In *Doornbos*, the ALJ assigned little weight to a doctor's assessment when the doctor had only examined the claimant five times in three years and was the "supervising provider" of the claimant's primary care provider, a nurse practitioner.

11

*Doornbos*, 2017 WL 8948744 at *5. The ALJ in *Doornbos* determined that the doctor would have had to rely on treatment notes and findings of the nurse practitioner in formulating his assessment, not his own, which the Sixth Circuit found to reflect "that the ALJ properly considered the length nature, and extent of the treatment relationship, among other factors, when evaluating Dr. Lemke's opinion." *Id*. Overbay has not provided the Court with authority indicating that the ALJ's treatment of Dr. Carter as a non-treating physician was erroneous.

However, even if the ALJ was incorrect in her finding that Dr. Carter is not a treating physician, the determination by the ALJ that Dr. Carter's opinion was not supported by medical evidence is supported by substantial evidence. As the ALJ noted, Dr. Carter's questionnaire was not supported by medical evidence other than his own conclusory statements that those ailments existed and caused the limitations he described. "A treating physician's opinion is only entitled to such . . . deference when it is a medical opinion." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010). In *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464 (6th Cir. 2014), the Sixth Circuit found that the opinion of a doctor in the form of a state agency questionnaire to provide information "about how [a] patient's diagnosed medical condition[s] affect her ability to function in a regular work-setting on a day-to-day basis," was not entitled to controlling weight. *Curler*, 561 F. App'x at 471 (internal citations omitted). Specifically, the Sixth Circuit found that the "solicited information is not a medical opinion, but rather an opinion as to Curler's inability to work." *Id*. As to the weight given a treating physician's opinion as to a claimant's RFC, the Sixth Circuit has also found:

> opinions on some issues, such as whether the claimant is disabled and her residual functional capacity, 'are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, *i.e.*, that would direct the determination or decision of disability.

*Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 599 (6th Cir. 2009), citing 20 C.F.R. § 416.927(e), *accord Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); s*ee also Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s] no supporting medical evidence.")

Here, Dr. Carter included specific diagnoses in the appropriate section of the form but failed to provide supporting medical evidence for these diagnoses and the restrictions indicated throughout the questionnaire. It is true that the ALJ might have explained at greater length why she did not accord the opinion of Dr. Carter controlling weight, but she did explain that she afforded Dr. Carter's opinion little weight because "the claimant was treated by his physician's assistant." D.E. 8-1 at 70. This statement by the ALJ indicates that she considered the required set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c); see also *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]'") (quoting *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017)).

In light of the objective medical evidence in the record, the ALJ's decision to reject Dr. Carter's opinion is supported by substantial evidence and she gave "specific reasons" for rejecting Dr. Carter's questionnaire. *See Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x at 599 (finding that the ALJ's determination that the treating physician's opinion was not consistent with the objective evidence in the record satisfied the "sufficiently specific" requirement.); *see Rogers*, 486 F.3d at 242. Additionally, "the ALJ need not find credible a claimant's subjective complaints or medical

assessments not supported by the medical evidence or the record as a whole." *Long*, 1 F. App'x. at 331. Here, the ALJ determined that Dr. Carter's RFC assessment was not adequately supported by medical evidence and that Overbay's statements concerning the severity of his impairments were inconsistent with the medical evidence and record as a whole. As such, the ALJ was not required to rule in accordance with Dr. Carter's opinion or Overbay's subjective statements. Even if the Court were to find that Overbay's position is also supported by substantial evidence, the ALJ and Commissioner's decisions must still be affirmed. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

## V. Conclusion

Accordingly, and the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)  Plaintiff's Motion for Summary Judgment (D.E. 14) is **DENIED**;

(2)  The Commissioner's Motion for Summary Judgment (D.E. 16) is **GRANTED**;

(3)  A judgment shall be entered concurrently with this opinion.

This the 16th day of January, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge